**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:

PAPER MÍDIA LTDA,                                    Case No.: _____
                                                     (Chapter 15)

Debtor in a Foreign Proceeding

**FOREIGN REPRESENTATIVE'S PETITION FOR**
**RECOGNITION OF DEBTOR'S BRAZILIAN PROCEEDING**
**AND MOTION FOR ORDER GRANTING RELATED RELIEF**
**PURSUANT TO 11 U.S.C. §§ 105(a), 1509(b), 1517, 1520, 1521 AND 1525**

Capital Administradora Judicial Limitada (the "Petitioner" or "Foreign Representative"),

in its capacity as the court-appointed Judicial Administrator and duly-authorized foreign

representative of the Brazilian proceeding (the "Brazilian Proceeding") of the above-captioned

debtor, Paper Mídia Ltda ("Paper Mídia" or "Debtor"), together with its affiliates that are also

subject to the Brazlian Proceeding, Diplomata S/A Industrial e Comercial ("Diplomata"), Klassul

Indústria de Alimentos S/A ("Klassul"), Attivare Engenharia e Eletricidade Ltda ("Attivare"),

and Jornal Hoje Ltda ("Jornal Hoje") (collectively, the "Debtors"),[1] pending before Judge Pedro

Ivo Lins Moreira of the First Civil Court of Cascavel – Judiciary Branch of the State of Paraná

(the "Brazilian Court") pursuant to Federal Law No. 11.101 of February 9, 2005 ("Brazilian

Bankruptcy Law") under the laws of the Federative Republic of Brazil ("Brazil"), respectfully

submits this petition,[2] and hereby moves the Court for entry of an order, substantially in the form

---

[1]     Each of the five Debtors has petitioned for recognition of the Brazilian Proceeding, and
joint administration is being requested concurrently by separate motion.

[2]     Petitioner has filed the form Chapter 15 Petition for Recognition of a Foreign Proceeding
contemporaneously herewith.

attached hereto as **Exhibit A** (the "Proposed Order"), recognizing the Brazilian Proceeding as a

"foreign main proceeding" pursuant to section 1517 of Title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and granting certain related relief

pursuant to sections 105(a), 1509(b), 1520, 1521 and 1525 of the Bankruptcy Code. In support of

the Chapter 15 Petition, Petitioner has filed contemporaneously herewith and incorporates herein

by reference the Declaration of Dr. Luis Claudio Montoro Mendes, on behalf of the Foreign

Representative (the "Foreign Representative Declaration"),[3] a September 29, 2015 sworn

certificate from the Brazilian Court certifying the existence of the Brazilian Proceeding and the

appointment of the Petitioner as the Judicial Administrator (the "Brazilian Court Certification"),[4]

and the Brazilian Court's December 1, 2014 Decision on Transformation of Court-Supervised

Reorganization into Bankruptcy (the "Brazilian Bankruptcy Order"),[5] and respectfully states as

follows:

---

[3]    The Foreign Representative Declaration is attached hereto as **Exhibit B**. Pursuant to 11 U.S.C. § 1515(b)(3), the Brazilian Bankruptcy Order confirms the existence of an active "foreign proceeding" involving the Debtor, and the Petitioner's appointment as Foreign Representative for the Debtor.

[4]    A certified copy and certified translation of the September 29, 2015 Brazilian Court Certification are attached as Exhibit 1 to the Foreign Representative Declaration. Pursuant to 11 U.S.C. § 1515(b)(2), the Brazilian Court Certification affirms the existence of the Brazilian Proceeding and the appointment of the Petitioner as the Judicial Administrator.

[5]    A certified copy and translation of the Brazilian Court's December 1, 2014 Brazilian Bankruptcy Order are attached as Exhibit 2 to the Foreign Representative Declaration. Pursuant to 11 U.S.C. § 1515(b)(3), the Brazilian Bankruptcy Order confirms the existence of an active "foreign proceeding" involving the Debtor, and the Petitioner's appointment as Judicial Administrator for the Debtor. Due to the length of the Brazilian Bankruptcy Order and to conserve costs to the Debtors' estate, the Petitioner has not obtained a certified translation of the Brazilian Bankruptcy Order at this time, but would, of course, obtain a certified translation should the Court require one pursuant to 11 U.S.C. § 1515(d).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as Rule 87.2 of the Local Rules of the United States District Court for the Southern District of Florida ("Local District Rule 87.2"), which incorporates the General Order of Reference entered July 11, 1984 referring all cases arising under Title 11 of the United States Code and proceedings arising in or related to cases under Title 11, United States Code, to the Bankruptcy Judges for this judicial district ("Standing Order of Reference").

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(p).

3.      For reasons discussed below, venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410(1) and (3).

## FACTUAL BACKGROUND

### A.  Corporate History of the Debtors

4.      Diplomata, Klassul, Attivare, Jornal Hoje, and Paper Mídia are joint debtors in the Brazilian Proceeding.

5.      Diplomata began operations in 1996 as a poultry producer and distributor. Diplomata maintains its headquarters in Capanema, Paraná, Brazil, and its management center in Cascavel, Paraná, Brazil. As of July 2012, Diplomata was the largest employer in Capanema, with approximately 5,000 employees working in its processing and animal feed plants.

6.      Klassul began operations in 1981 as a company that produces fertile poultry eggs, manufactures animal feed, and wholesales pesticides, fertilizer, and soil products. Klassul has not been operational since 1995.

7.      Attivare began operations as a construction company in 2005, but has not been operational since 2011.

8.      Jornal Hoje began operations as a newspaper publisher and printer in 1998, but has not been operational since it transferred its publications to Paper Mídia in 2000.

9.      Paper Mídia began operations as a newspaper publisher and printer in 2000 upon receiving transfer of the Jornal Hoje publications. Paper Mídia has not been operational since it transferred the Jornal Hoje publications to RCK Comunicações Ltda., an affiliated, non-debtor entity, in 2009.

10.     Klassul, Attivare, Jornal Hoje, and Paper Mídia all maintained headquarters in Cascavel, Paraná, Brazil.

11.     Prior to the commencement of the Brazilian Proceeding, Jacob Alfredo Stoffels Kaefer ("Kaefer"), a congressman from the Brazilian state of Paraná, controlled and was the ultimate beneficial owner of the Debtors.

12.     In the month prior to the Debtors' bankruptcy petition, however, Kaefer removed Diplomata from the common ownership as his other non-debtor entities by transferring his majority ownership of Diplomata to his wife, Clarice Roman ("Roman").

13.     Similarly, between July 1, 2012 and August 3, 2012, the ownership structures of Klassul, Attivare, Jornal Hoje, and Paper Mídia were modified to remove them from the common ownership as other non-debtor entities under Kaefer's ultimate control.

### B. Commencement of Brazilian Proceeding and Investigation into Debtors' Pre-Petition Conduct

14.     On August 3, 2012, the Debtors jointly petitioned the Brazilian Court for court-supervised reorganization.

15.     In their petition, to justify the joint filing, the Debtors contended that their operations were interrelated and that the companies had effectively submitted to Diplomata´s

4

control. Specifically, the Debtors represented that Klassul provided eggs to Diplomata, Attivare maintained the construction of Diplomata's buildings, and that Jornal Hoje and Paper Mídia produced Diplomata's marketing materials and a company newspaper for Diplomata's employees. *See* Brazilian Bankruptcy Order, at Part III.1(a)(8).

16.    At the time of the petition, the Debtors had reported losses of approximately R$314.3 million.

17.    In their petition, the Debtors claimed they were suffering from a temporary decline in liquidity and decrease in revenues caused generally by the global financial crisis of 2008. The Debtors also claimed that the poultry production business was negatively affected by the increased cost of animal feed production in 2012 due to crop damage and a drought.

18.    On August 17, 2012, the Brazilian Court granted the Debtors' petition commencing the Brazilian Proceeding as a "judicial reorganization" under Brazilian Bankruptcy Law, and appointed Darci Pessali as the bankruptcy trustee.

19.    From the outset of the Brazilian Bankruptcy Proceeding, the Debtors refused to cooperate with the bankruptcy trustee (at that time, Mr. Pessali) or provide access to its books and records.

20.    Subsequently, in early 2014, contrary to the Debtors' cited causes of the need for court-supervised reorganization, the Debtors' major creditors reported to the Brazilian Court their concerns that the Debtors' insolvency was caused by the pre-petition fraudulent conduct of Kaefer, who was their ultimate owner at that time, to include the transfer of the Diplomata's assets and resources to related non-debtor entities.

21.     Upon the creditors' accusations, the Brazilian Court appointed Deloitte Touche Tohmatsu Consultores LTDA ("Deloitte") as the new bankruptcy trustee, and assigned Deloitte the task of investigating the fraudulent acts identified by the creditors.

22.     While Deloitte pursued its investigation, a reorganization plan was approved by a vote of the creditors on April 29, 2014.

23.     Over the next months, and in spite of the Debtors' continued refusal to cooperate with Deloitte's investigation or to provide the required monthly balance sheets and activity reports, Deloitte submitted a series of reports to the Brazilian Court finding that the creditors' accusations had merit, which findings contributed to the Brazilian Court's ultimate decision to reject the Debtors' plan of reorganization.

24.     As relayed by the Brazilian Court in the Brazilian Bankruptcy Order, Deloitte's investigation confirmed that Diplomata's insolvency was, in fact, precipitated by a number of fraudulent acts of its principal shareholders, including: (i) the embezzlement of R$127 million by Kaefer through purportedly interest-free loans; (ii) political donations in excess of R$1.7 million when Diplomata was on the brink of insolvency in 2010; (iii) the 2011 sale of a supermarket chain to a non-debtor, affiliated entity, for which Diplomata never collected the R$35 million in sale proceeds; and (iv) the March 2012 sale of West Side Shopping to a non-debtor, affiliated entity, for which Diplomata never collected the R$13.9 million in sale proceeds.

25.     Deloitte's investigation also revealed that, prior to the commencement of the Brazilian Proceeding, Kaefer caused Diplomata, with the intent to deceive Diplomata's creditors, to transfer its viable business operations to Interagro Industria e Comércio Ltda. ("Interagro") (formally named Avícola Coré-Etuba Ltda.), another affiliated, non-debtor entity.

26.     In 2006 or 2007, Kaefer effectively acquired Interagro by using an employee named Everli Vitória Chandorra ("Ms. Chandorra") as his representative. Ms. Chandorra became Interagro's CEO. In addition, Ms. Chandorra became the legal representative of Ultragal Sociedad Anonima and Servier Corp., both offshore companies (domiciled in Uruguay and Panama, respectively) that have served as Interagro's shareholders since its incorporation. During a deposition in January 2007, Ms. Chandorra testified that although she was the CEO of Interagro, she took her instructions from Diplomata. During that time, Diplomata diverted its viable business opportunities to Interagro. As a result, Diplomata's business decreased significantly, while Interagro's prospered.

27.     In 2013, only after the Debtors field for judicial reorganization, Interagro was separated from Diplomata, and Kaefer formally became a shareholder of Interagro. After Kaefer formally acquired Interagro, Ms. Chandorra stepped down as CEO of Interagro, and Giovanni Cataldi Neto was appointed to the position.

28.     This transfer of Diplomata's viable business to a non-debtor entity objectively demonstrates Diplomata's intention to hide and shield assets from the bankruptcy estate.

29.     With regard to the remaining Debtors, Deloitte discovered that the operations of Klassul, Attivare, Jornal Hoje, and Paper Mídia had all ceased well before the commencement of the Brazilian Proceeding; the cessation had not been disclosed in the Debtors' petition for court-supervised reorganization. This omission was significant, because under Brazilian law, a non-operational company is not qualified to petition for court-supervised reorganization. Deloitte further advised the Brazilian Court that although Klassul, Attivare, Jornal Hoje, and Paper Mídia were no longer operational, their viable business operations had been transferred to successor,

non-debtor entities that were also under the control of Kaefer and operated from their predecessors' former office locations.

### C. Conversion from Reorganization to Bankruptcy and Appointment of the Petitioner

30.     On December 1, 2014, the Brazilian Court entered the Brazilian Bankruptcy Order, which rejected the Debtors' reorganization plan, and declared the Debtors bankrupt.

31.     The Brazilian Court recounted the following reasons for its decision to declare the Debtors bankrupt: (i) the operation of the Debtors under the reorganization plan was not economically feasible;[6] (ii) the creditors' purported approval of the reorganization plan was the result of voter manipulation;[7] (iii) the Debtors failed to comply with their obligation to make an initial installment payment that had been due while the reorganization plan was pending approval;[8] (iv) the majority of the Debtors, Klassul, Attivare, Jornal Hoje, and Paper Mídia, were non-operational entities, which cannot qualify for reorganization under Brazilian law;[9] and (v) the reorganization plan "was nothing more than a subterfuge to conceal the frauds and abuses performed by the controlling shareholders."[10]

32.     At that time, the Brazilian Court also accepted Deloitte's resignation, and appointed the Petitioner as the new Judicial Administrator.[11]

---

[6]     *See, e.g.*, Brazilian Bankruptcy Order § 11.2.d.

[7]     *See id.* § III.7.
[8]     *See id.* § III. 11.2.b.

[9]     *See id.* § III. 11.2.a.

[10]    *See id.* ¶ 111.

[11]    *See id.* ¶¶ 389 & 410.

33.    In addition, the Brazilian Court, pursuant to applicable Brazilian law, pierced the corporate veil of the Debtors, and extended the bankruptcy to include more 22 related entities and 13 of their principals, including Kaefer and his family members (the "Related Entities"). Additional related entities were added as Related Entities in January 2015.

### D.  Current Status of Brazilian Proceeding

34.    Upon the Brazilian Proceeding being converted to a bankruptcy, the Petitioner, in its capacity as Judicial Administrator, became obligated under the Brazilian Bankruptcy Order and Brazilian Bankruptcy Law to collect and liquidate the Debtors' assets under the supervision of the Brazilian Court in order to make distributions to creditors on account of their allowed claims.

35.    In May 2015, a creditors' list was established, and the outstanding amount of allowed claims against the Debtors' estate was R$1,486,775,218.46. By contrast, the readily identifiable assets remaining in the Debtors' possession following conversion of the Brazilian Proceeding were relatively minimal.

36.    As a result, the prospect of any substantial recovery becoming available to the Debtors' creditors is largely dependent upon the Petitioner finding and retrieving valuable assets that had been transferred away from the Debtors prior to the commencement of the Brazilian Proceeding or the conversion from a judicial reorganization to a bankruptcy.

### RELIEF REQUESTED

37.    The Petitioner requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1509(b), 1517, 1520, 1521 and 1525 of the Bankruptcy Code:

a. granting the Chapter 15 Petition;

b. finding and concluding that the Brazilian Proceeding is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code;

c. finding and concluding that the Petitioner is the "foreign representative" of the Brazilian Proceeding as defined in section 101(24) of the Bankruptcy Code;

d. finding and concluding that the Chapter 15 Petition, together with the Foreign Representative Declaration (and exhibits thereto), meets the requirements of section 1515 of the Bankruptcy Code;

e. recognizing the Brazilian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code;[12]

f. granting relief available as of the right upon recognition of a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code, including, without limitation, relief pursuant to sections 1509(b) and 1520 of the Bankruptcy Code;

g. granting additional appropriate relief authorized pursuant to section 1521(a) of the Bankruptcy Code and, to the extent necessary, Rule 65 of the Federal Rules of Civil Procedure as made applicable herein by Rule 7065 of the Federal Rules of Bankruptcy Procedure, including, without limitation:

   i. staying the commencement or continuation of any action or proceeding without the consent of the Petitioner concerning the Debtors' assets, rights, obligations, or liabilities to the extent not stayed pursuant to section 1520(a)(1) of the Bankruptcy Code;

   ii. staying execution against the Debtor's assets to the extent not stayed pursuant to section 1520(a)(2);

   iii. suspending the right to transfer or otherwise dispose of any of the Debtor's assets to the extent this right has not been suspended pursuant to section 1520(a)(3);

   iv. providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code, Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Florida ("Local Rule 2004-1"), and finding and

---

[12] Out of an abundance of caution, to the extent the Court determines the Debtor's center of main interests is not in Brazil, the Petitioner alternatively requests recognition of the Brazilian Proceeding is a "foreign nonmain proceeding".

concluding that any such examinations, evidence, or information is necessary and appropriate under the law of the United States to assist the Petitioner in the fulfillment of its duties as trustee and Foreign Representative of the Brazilian Proceeding;

v.  entrusting the administration or realization of all of the Debtor's assets within the territorial jurisdiction of the United States to the Petitioner pursuant to section 1521(a)(5) of the Bankruptcy Code; and

vi.  granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 550, and 724(a);

h.  entrusting the distribution of all of the Debtor's assets located within the United States to the Petitioner pursuant to section 1521(b) of the Bankruptcy Code;

i.  finding and concluding that the relief requested herein pursuant to section 1521 of the Bankruptcy Code sufficiently protects the interests of creditors and other interested entities, including the Debtor in satisfaction of section 1522(a) of the Bankruptcy Code;

j.  finding and concluding that neither recognition of the Brazilian Proceeding as a "foreign main proceeding" nor the additional relief requested in the Chapter 15 Petition is manifestly contrary to the public policy of the United States or otherwise prohibited pursuant to section 1506 of the Bankruptcy Code; and

k.  granting such other and further relief as this Court may deem just and proper.

## BASIS FOR RELIEF REQUESTED

### A.    The Court Should Recognize the Brazilian Proceeding as a Foreign Main Proceeding and the Petitioner as its Foreign Representative

38.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See British American Ins. Co. Ltd. v. Fullerton* (*In re British American Ins. Co. Ltd.*), 488 B.R. 205, 213–14 (Bankr. S.D. Fla. 2013). As explained below, venue in this District is proper, and the Brazilian

Proceeding, the Petitioner and this Chapter 15 Petition satisfy all of the section 1517(a) requirements.

1. **The Court has Jurisdiction to Recognize the Brazilian Proceeding and Grant the Relief Requested**

39.     As noted above, this Court has jurisdiction to hear and determine chapter 15 cases as core matters pursuant to 28 U.S.C. §§ 157(b)(2)(P) and 1334, as well as S.D. Fla. Local Rule 87.2 which incorporates the Standing Order of Reference.

40.     Sections 1504 and 1509(a) of the Bankruptcy Code provide that a chapter 15 case is properly commenced when a foreign representative files a petition for recognition of a foreign proceeding. For the reasons discussed below, the Brazilian Proceeding qualifies as a "foreign proceeding" and the Petitioner qualifies as its "foreign representative." Therefore, by filing this Chapter 15 Petition, the Petitioner properly commenced this chapter 15 case. Moreover, the Debtor—as an entity subject to the Brazilian Proceeding—is eligible to be a chapter 15 "debtor" as that term is defined in section 1502(1) of the Bankruptcy Code. To the extent applicable to chapter 15 cases, the requirement in section 109(a) of the Bankruptcy Code that a debtor have assets or business operations in the United States to be a debtor is also satisfied here.[13]

---

[13]     Although the Second Circuit has held that the requirements of section 109(a) of the Bankruptcy Code must be satisfied by chapter 15 debtors, courts in other circuits have disagreed. *Compare Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013), with Transcript of Bench Ruling on Dec. 17, 2013, at 8:14-9:18, *In re Bemarmara Consulting A.S.*, Case No. 13-13037 (KG) (Bankr. D. Del. Filed Feb. 20, 2014) (refusing to apply section 109(a) to chapter 15 case and stating belief of "strong likelihood" that the Third Circuit would not agree with the Second Circuit's *Drawbridge* decision).   The Petitioner respectfully submits that the Eleventh Circuit would not conclude that section 109(a) applies to chapter 15 cases, consistent with its decisions prior to the enactment of chapter 15. *See, e.g.*, *Goerg v. Parungao*, 844 F.2d 1562, 1567-68 (11th Cir. 1988) (holding foreign proceeding should be granted comity pursuant to former section 304 of Bankruptcy Code regardless of whether foreign debtor meets eligibility requirements of section 109).   In any event, the Petitioner does not concede that section 109(a) applies to this case and reserves all of its rights to argue otherwise.

Specifically, the Debtor has deposited estate funds in an account maintained by Kobre & Kim LLP at Citibank, N.A. in Miami, Florida (the "Escrow Account"). The Debtor retains full ownership of the funds in the Escrow Account unless and until they are released at the Petitioner's direction. Further, the Petitioner anticipates that through recognition of the Brazilian Proceeding and the exercise of discovery powers requested herein, it will be able to identify critical records unavailable in Brazil about the Debtors' borrowing and leasing, such as documents regarding the warehousing of equipment and bank records, which may lead to the discovery of assets and causes of action belonging to the Debtor located in the territorial jurisdiction of the United States. The Petitioner submits that these assets satisfy the requirement of section 109(a) of the Bankruptcy Code. *See, e.g.*, *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 412–13 (Bankr. S.D.N.Y. 2014) (concluding section 109(a) satisfied by escrow account established using funds of debtor one day before chapter 15 petition was filed (*citing In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372–73 (Bankr. S.D.N.Y. 2014) (finding section 109(a) satisfied by potential causes of action and funds in retainer account with foreign representative's United States-based law firm)).

41.     Venue is also proper in this District. Section 1410 of Title 28 of the United States Code provides that a chapter 15 case "may be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States, (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court, or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative." 28 U.S.C. § 1410.

42.     As described above, the Debtor does not have a place of business in the United States, and substantially all of its business operations on or before the conversion of the Brazilian Proceeding from reorganization to a bankruptcy were in Brazil. Thus, to the best of the Petitioner's information and belief, as of the date hereof, the Debtor does not have any employees or operations in the United States.

43.     In addition, the Debtors' only known property of value in the United States, and therefore its principal assets, are the funds held in the Escrow Account located in in this District.

44.     Further, to the best of the Petitioner's information and belief, the Debtor is not currently party to any pending lawsuits in the United States.

45.     The Petitioner asserts that venue in this District is consistent with the interests of justice and the convenience of the parties, because, to the best of the Petitioner's information and belief, the Debtors' only known assets in the United States are the funds held in the Escrow Account located in in this District; the Debtor does not have any employees or operations in the United States; and the Debtor is not parties to any pending actions in the United States. With regard to the convenience of the parties, two entities with which it is believed the Debtors transacted business and from which Diplomata received significant sums are located in this District, and it appears transacted business with the Debtors. Moreover, because Miami is known as a financial and legal center within the United States for both Brazilian companies with international operations and wealthy Brazilian individuals—as evidenced by the fact that more than half of all chapter 15 cases seeking recognition of Brazilian proceedings have been commenced in this District (*see infra* ¶ 49)—the Petitioner believes that the interests of justice are served by establishing venue in this District. Accordingly, the Petitioner respectfully

submits that venue in this District is proper pursuant to both sections 1410(1) and 1410(3) of Title 28 of the United States Code.

### 2.    The Brazilian Proceeding Is a Foreign Main Proceeding

46.    The Brazilian Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

47.    *First*, the Brazilian Proceeding comes within the general definition of "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code. Section 101(23) requires that a "foreign proceeding" be (1) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See* 11 U.S.C. § 101(23). The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

48.    The Brazilian Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding." Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which came into effect on June 9, 2005. The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceedings as well as two forms of reorganization: (1) a court-supervised reorganization proceeding known as *recuperacao judicial* ("judicial reorganization"), and (2) an expedited reorganization proceeding known as *recuperacao extrajudicial* ("extra-judicial reorganization"). As a general rule, once a judicial reorganization has commenced, the debtor retains the right to administer its assets and affairs and may continue to run its business. A judicial administrator (*administrador judicial*) is appointed by the court and is responsible for, among other things, overseeing the debtor's management of its day-to-day affairs and managing the claims verification process and informing the court when the debtor

15

fails to meet its obligations under the plan or otherwise commits malfeasance. Moreover, once a judicial reorganization has commenced, the reorganization proceeding may be converted into a liquidation proceeding at any time. Once a proceeding is converted to a liquidation, Brazilian Bankruptcy Law provides that officers and directors of the debtor company are no longer allowed to manage its affairs and the assets of the debtor are collected and sold by the judicial administrator under the continued supervision of the Brazilian Court.

49.     As noted above, the Brazilian Court entered an order commencing the Brazilian Proceeding as a judicial reorganization under Brazilian Bankruptcy Law on August 17, 2012. As also noted above, following the Brazilian Court's discovery of significant and rampant pre-petition fraud, voter manipulation, the non-operational status of four of the five Debtors, and the Debtors' failure to make their first payment under the pending reorganization plan, the Brazilian Court rejected the reorganization plan, and converted the Brazilian Proceeding from a judicial reorganization to a bankruptcy pursuant to Brazilian Bankruptcy Law. At the time of the conversion, the Brazilian Court appointed the Petitioner as the Judicial Administrator. Since then, the Petitioner continues to fulfill its obligations under Brazilian Bankruptcy Law and the supervision of the Brazilian Court to collect and liquidate the Debtors' assets. Accordingly, the Petitioner respectfully submits that the Brazilian Proceeding qualifies as a "foreign proceeding" for purposes of chapter 15 recognition.

50.     Consistent with the foregoing, Petitioner's United States counsel has identified a total of at least nineteen unrelated cases that have been commenced seeking chapter 15 recognition of a Brazilian proceeding governed by Brazilian Bankruptcy Law, including at least eleven in this District. In every one of these cases, the Brazilian proceeding was found to be a "foreign proceeding" for purposes of granting chapter 15 recognition. *See In re Viação Área São*

*Paulo S.A.*, Case No. 15-22091, ECF No. 14 (Bankr. S.D. Fla. Aug. 18, 2015) (Mark, J.) (recognizing Brazilian liquidation proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding"); *In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015) (recognizing Brazilian judicial reorganization proceeding pending under Brazilian Bankruptcy Law as "foreign main proceeding"); *In re Aralco S.A. – Industria e Comercio*, Case No. 15-10419, ECF No. 22 (Bankr. S.D.N.Y. Apr. 21, 2015) (recognizing Brazilian liquidation proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding"); *In re Probobank S.A.*, Case No. 14-37790, ECF No. 8 (Bankr. S.D. Fla. Feb. 19, 2015) (Cristol, J.) (same); *In re Banco Cruzeiro do Sul S.A.*, Case No. 14-22974, ECF No. 16 (Bankr. S.D. Fla. July 11, 2014) (Isicoff, J.) (same); *In re Industria de Alimentos Nilza S.A.*, Case No. 14-22589, ECF No. 8 (Bankr. S.D. Fla. July 2, 2014) (Mark, J.) (same); *In re Petroforte Brasileiro de Petroleo Ltda.*, Case No. 14-15408, ECF No. 7 (Bankr. S.D. Fla. Mar. 27, 2014) (Mark, J.) (same); *In re Banco Pontual S.A.*, Case No. 13-35298, ECF No. 10 (Bankr. S.D. Fla. Nov. 14, 2013) (Isicoff, J.) (same); *In re Enco Zolcsak Eguipamentos Industriais Ltda.*, Case No. 1122924, ECF No. 15 (Bankr. S.D. Fla. July 12, 2011) (same); *In re Transbrasil S.A. Linhas Aereas*, Case No. 11-19484, ECF No. 9 (Bankr. S.D. Fla. May 11, 2011) (same); *In re Banco Santos, S.A.*, Case No. 10-47543, ECF No. 9 (Bankr. S.D. Fla. Jan. 2011) (same); *In re Fazendas Reunidas Boi Gordo, S.A.*, Case No. 09-37116, ECF No. 7 (Bankr. S.D. Fla. Jan. 11, 2010) (same); *In re VarigLogistica S.A.*, Case No. 09-15717, ECF No. 77 (Bankr. S.D. Fla. May 11, 2009) (recognizing Brazilian judicial reorganization proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding"); *see also In re Sifco S.A.*, Case No. 14-11179, ECF No. 38 (Bankr. S.D.N.Y. Oct. 23, 2014) (same); *In re Lupatech S.A.*, Case No. 14-11559, ECF No. 26 (Bankr. S.D.N.Y. June 26, 2014) (same); *In re Rede Energia S.A.*, Case No. 14-10078, ECF No. 18 (Bankr. S.D.N.Y. Mar. 6, 2014) (same);

*Centrais Eletricas Do Para S.A.*, Case No. 12-14568, ECF No. 19 (Bankr. S.D.N.Y. Dec. 12, 2012) (same); *In re Independencia S.A.*, Case No. 09-10903, ECF No. 23 (Bankr. S.D.N.Y. Mar. 26, 2009) (same); *In re ITSA Intercontinental Telecomunicacoes Ltda.*, Case No. 08-13927, ECF No. 16 (Bankr. S.D.N.Y. Jan. 29, 2009) (recognizing Brazilian extra-judicial reorganization proceeding pending under Brazilian Bankruptcy Law as "foreign proceeding").

51.    *Second*, the Brazilian Bankruptcy Proceeding qualifies as a "foreign main proceeding." A "foreign main proceeding" is defined in the Bankruptcy Code as a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The Bankruptcy Code neither defines nor provides a conclusive test for determining the location of a debtor's center of main interests ("COMI"). However, "[i]n the absence of evidence to the contrary," there is a statutory presumption that a debtor's "registered office" is its COMI. *See* 11 U.S.C. § 1516(c). To determine a debtor's COMI, this court and others have placed importance on the ability of third parties to readily ascertain a corporate debtor's COMI based on "where the debtor conducts its regular business . . . . Among other factors that may be considered are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013); *see also In re British Am. Ins. Co.*, 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third parties."); *In re Ran*, 390 B.R. 257, 266 (Bankr. S.D. Tex. 2008) ("A debtor's centre of main interests must be identified by reference to criteria that are both objective and ascertainable by third parties.") (internal quotation marks omitted) (citing European Council Regulation No. 1346/2000 of 29 May 2000). Additionally, where, as here, there is a delay between the commencement of a foreign proceeding and the commencement of the chapter 15

18

case, the court may also consider relevant activities during that gap period such as liquidation activities and administrative functions. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 419 (Bankr. S.D.N.Y. 2014) (concluding, over objection, that debtor's COMI as of chapter 15 filing date was Cayman Islands despite finding Cayman Islands was not its COMI when the foreign liquidation proceeding was commenced, based on activities of provisional liquidators during period between filings).

52.    At all times since it began operations in 1996, Diplomata has been incorporated and headquartered in Capanema, Paraná, Brazil, and maintained its management center in Cascavel, Paraná, Brazil.

53.    Additionally, at all times since they began operations, Klassul, Attivare, Jornal Hoje, and Paper Mídia have all maintained their headquarters in Cascavel, Paraná, Brazil.

54.    Moreover, the Brazilian Proceeding has been pending before the Brazilian Court for over three years now. Since the conversion of the Brazilian Proceeding to a bankruptcy, the Petitioner—a Brazilian company that specializes in Judicial Administration—has now spent over a year collecting and liquidating the Debtor's assets, which to date have largely been Brazilian assets, under the continuing supervision of the Brazilian Court. The Petitioner is not aware of the existence of any insolvency proceeding concerning the Debtor other than the Brazilian Proceeding, nor is it aware of any suggestion having been made at any time during its pendency by a creditor or party in interest that the Debtor's center of main interest is anywhere other than Brazil.

55.    Thus, based on the facts present in this case, the Petitioner respectfully submits that Cascavel, Paraná, Brazil should be held to be the center of the Debtor's main interests. Accordingly, given that it is pending in the Debtor's COMI, the Brazilian Proceeding should be

recognized as a "foreign main proceeding" pursuant to section 1517(b)(l) of the Bankruptcy Code.

### 3.    The Petitioner is a Proper "Foreign Representative"

56.    The second requirement for recognition of a foreign main proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative" applying for recognition be a person or body. *See* 11 U.S.C. § 1517(a)(2). Section 101(24) of the Bankruptcy Code provides that

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

57.    Here, the Petitioner is an entity that has been duly appointed by the Brazilian Court to act as the Judicial Administrator of the Brazilian Proceeding. In such capacity, while the Brazilian Proceeding was in judicial reorganization, the Petitioner, among other things, oversaw the Debtor's management of its day-to-day affairs and managed the claims verification process. Once the Brazilian Proceeding was converted to a bankruptcy, the Petitioner's roll expanded to include the collection and liquidation of the Debtor's assets under the continued supervision of the Brazilian Court. For these reasons, the Petitioner respectfully submits that it is a "foreign representative" that is a "person or body" in satisfaction of sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

### 4.    The Chapter 15 Petition Satisfies the Requirements of Section 1515

58.    The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a)(3). Specifically,

as relevant here, section 1515 requires a petition for recognition of a foreign proceeding to be accompanied by "a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative. . . [or] any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative" and "a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. §§ 1515(b)(2)&(3) and (c).

59.    Here, all of those procedural requirements are satisfied. Pursuant to section 1515(b)(2) of the Bankruptcy Code, the October 16, 2015 Brazilian Court Certification affirms the existence of the Brazilian Proceeding and the appointment of the Petitioner as the Judicial Administrator. Additionally, pursuant to section 1515(b)(3) of the Bankruptcy Code, the Foreign Representative Declaration and the Brazilian Bankruptcy Order establish the existence of a foreign proceeding involving the Debtor, and the appointment of the Petitioner as Judicial Administrator and Foreign Representative. In accordance with section 1515(b)(3) of the Bankruptcy Code, a copy of the original Brazilian Bankruptcy Order (in Portuguese) as well as an English translation thereof are attached to the Foreign Representative Declaration as Exhibits 1 and 2.[14] Finally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative Declaration contains a statement identifying the Brazilian Proceeding as the only foreign proceeding currently pending with respect to the Debtor.

*        *        *

---

[14]    The Petitioner has provided a certified translation of the Brazilian Court Certification and a non-certified translation of the Brazilian Bankruptcy Order. Due to the length of the Brazilian Bankruptcy Order and to conserve costs to the Debtors' estate, the Petitioner has not obtained a certified translation of the Brazilian Bankruptcy Order at this time, but would, of course, obtain a certified translation should the Court require one pursuant to 11 U.S.C. § 1515(d).

60.     For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied, and that the Petitioner and/or the Debtor, as applicable, are entitled to all of the relief provided as of right upon recognition under chapter 15 of the Bankruptcy Code.[15] Accordingly, the Court should enter the Proposed Order recognizing the Brazilian Proceeding as a foreign main proceeding.

**B.      The Court Should Grant the Foreign Representative's Request for Discretionary Relief under Chapter 15 of Bankruptcy Code**

61.     In addition to the relief automatically provided under sections 1509(b) and 1520 of the Bankruptcy Code upon recognition of the Brazilian Proceeding, the Petitioner requests that this Court provide additional relief and assistance pursuant to sections 105(a), 1521 and 1525 of the Bankruptcy Code as follows.

**1.      The Relief Requested Pursuant to Sections 1521 is Warranted and Appropriate Under the Circumstances**

62.     Upon recognition of a foreign proceeding and at the request of a foreign representative, the Court may grant (with certain express exceptions not applicable here) "any appropriate relief," including any injunctive relief and "any additional relief that may be available to a trustee," that is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a). Additionally, section 1521(b) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the

---

[15]     Upon recognition of the Brazilian Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including, among other things, the right of the Petitioner to direct access in other Federal and State courts in the United States, and a stay that enjoins actions against and otherwise protects the Debtor.  *See* 11 U.S.C. §§ 1509(b) and 1520, respectively. In addition, upon the Court's recognition of the Brazilian Bankruptcy Proceeding as a foreign main proceeding, section 1520(a){l) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtor.

debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

63.     The Petitioner requests that the Court grant the relief authorized by sections 1521(a) and (b) of the Bankruptcy Code.

64.     *First*, to the extent not otherwise stayed under sections 1520 and 362 of the Bankruptcy Code, the Petitioner requests that the Court, in its discretion under sections 1521(a)(1), (2) and (3) of the Bankruptcy Code, enter a stay against any parties that may attempt to commence prepetition or post-petition actions and/or claims in the United States against the Debtor or its property, or otherwise attempt to transfer, encumber or dispose of such property. The Petitioner fears that certain creditors may take actions in the United States against the Debtor or its property—especially property which the Petitioner has yet to identify as belonging to the Debtor and/or recoverable for distribution to the Debtor's creditors—seeking to obtain more than the distribution they are entitled under the Brazilian Bankruptcy Law. If such creditors can effectively evade the Brazilian Proceeding by commencing actions in the United States, the Petitioner, on behalf of the Debtor's estate, would be left to defend against these suits, regardless of their merit. This could irreparably deplete the resources available to the Petitioner to collect and administer the Debtor's assets and the resulting distributions to creditors in the Brazilian Proceeding. *See, e.g.*, *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors."); *In re Rubin*, 60 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." (quoting *In re Lines*, 81 B.R. 267,

270 (Bankr. S.D.N.Y. 1988)). For these reasons, an additional stay pursuant to sections 1521(a)(1) and (2) would protect the interests of all of the Debtor's creditors in having claims against the Debtor and its estate valued and paid on a consistent, non-discriminatory basis as determined by the Brazilian Court.[16]

65.    *Second*, the Petitioner requests that the Court enter an order authorizing it to examine witnesses and take evidence and information concerning the Debtor's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.. In accordance with its duties as Judicial Administrator, the Petitioner seeks to investigate the Debtors' business dealings in the United States in an attempt to find additional assets that should be collected and distributed to the Debtor's creditors in the Brazilian Proceeding. That investigation has expanded beyond the borders of Brazil and led the Petitioner to believe that such assets exist within the United States, among other countries. In fact, obtaining relief under section 1521(a)(4) is central to the purpose for which the Brazilian Court directed the Petitioner to commence a chapter 15 case.

66.    The Debtor is not currently party to any United States litigation and, therefore, without authorization from this Court, the Petitioner will not have immediate means to otherwise

---

[16]    The Petitioner submits that, to the extent the standards, procedures and limitations applicable to an injunction are applicable to this request, they are satisfied. *See* 11 U.S.C. § 1521(e); Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 65). For all the reasons set forth herein, among others, the Petitioner submits that (i) it will be successful on the merits in its request for recognition of the Brazilian Proceeding as a foreign proceeding and, in any event, such recognition will occur simultaneously with or prior to the granting of any relief to the Petitioner pursuant to section 1521 of the Bankruptcy Code, (ii) irreparable harm will result in the absence of injunctive relief, (iii) injunctive relief would not cause undue hardship or prejudice to the rights of any United States-based creditors, and (iv) public policy supports the requested relief. The Petitioner reserves the right to set forth more fully the basis for injunctive relief at the request of the Court or in the event such relief is objected to by a party in interest. The Petitioner reserves the right to set forth more fully the bases for this relief at the request of the Court or in the event such relief is objected to by a party in interest.

obtain discovery or compel disclosures from third parties. Moreover, the relief requested is consistent with relief granted by this and other courts upon granting chapter 15 recognition. *See, e.g.*, *Transbrasil S.A. Linhas Aereas,* Case No. 11-19484, 2014 WL 1655990 (Bankr. S.D. Fla. Apr. 25, 2014) (adjudicating third-party motions with respect to Rule 2004 examination and document requests made by foreign representative pursuant to section 1521(a)(4)), *aff'd in part, rev'd on other grounds*, Case No. 14–cv–22580 (KMM) [ECF No. 27] (S.D. Fla. March 30, 2015); *In re Hughes*, 281 B.R. 224, 227-230 (Bankr. S.D.N.Y. 2002) (holding, under statutory predecessor to Chapter 15, that scope of discovery in ancillary case was not limited by discovery available under law governing foreign proceeding, and noting that the same principle would apply under then-proposed section 1521(a)(4)). Accordingly, the Petitioner submits that authorization under section 1521(a)(4) is warranted and appropriate here.

67.     *Third*, and finally, to the extent not provided by sections 1520 and 363 of the Bankruptcy Code, the Petitioner requests that the Court enter an order entrusting the administration, realization, and distribution of all of the Debtor's assets within the territorial jurisdiction of the United States to the Petitioner. Akin to the duties of a chapter 7 trustee pursuant to section 704 of the Bankruptcy Code, the Petitioner (in its capacity as Judicial Administrator of the Brazilian Proceeding) is charged with liquidating the Debtor's assets and distributing the proceeds thereof in accordance with Brazilian Bankruptcy Law and under the supervision of the Brazilian Court. Arguably, by continuing to fulfilling these duties in the ordinary course of its appointment as Judicial Administrator and Foreign Representative of the Brazilian Proceeding with respect to assets identified and collected in the territorial United States, the Petitioner will be exercising the rights and powers provided to it as of right upon recognition pursuant to section 1520(a)(3) of the Bankruptcy Code. Nevertheless, the Petitioner

submits a more express grant of authority by the Court pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code is warranted and appropriate. Among other benefits, such relief would avoid the administrative cost and delay attendant to requesting similar relief in a piece-meal fashion for every asset subject to the Brazilian Proceeding that the Petitioner identifies as being located within the United States.[17]

### 2.    The Relief Requested Sufficiently Protects the Interests of Creditors

68.    Before granting relief pursuant to section 1521 of the Bankruptcy Code, the Court must be satisfied that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a). Although the Bankruptcy Code does not define "sufficient protection," the legislative history indicates that the prohibition applies where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005). Courts have construed section 1522 to require a balance of the potentially competing interests among the parties to a foreign proceeding and to provide the Court with broad latitude in granting relief to meet specific circumstances. *See, e.g.*, *In re Atlas Shipping N S.*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009).

69.    Here, the Debtor's creditors are "sufficiently protected" by the treatment afforded to them in the Brazilian Proceeding under Brazilian Bankruptcy Law. In particular, United States claimants (if any) are not being subjected to undue inconvenience or prejudice because, for example, Brazilian Bankruptcy Law does not create any additional burdens for foreign creditors to file a claim and confers upon them the same status and rights as creditors in Brazil. Moreover, the distribution scheme in liquidation prescribed under Brazilian Bankruptcy Law, is

---

[17]    Of course, the Judicial Administrator will comply with any notice or reporting requirements that the Court may deem necessary or appropriate.

substantially in accordance to that under the Bankruptcy Code, as it grants priority to certain administrative claims and grants secured claims priority over unsecured claims. Accordingly, the ultimate distributions creditors will receive on account of their claims in the Brazilian Proceeding will be materially consistent with those they would have received under United States law. While there may be exceptions on a case by case basis, courts have consistently held that the fact that certain creditors "may be denied an advantage over the debtor's other . . . creditors is not a valid reason to deny relief to the foreign representative." *Atlas Shipping*, 404 B.R. at 742. Accordingly, the Petitioner submits that the relief requested pursuant to section 1521 of the Bankruptcy Code is should not be prohibited or limited by section 1522.

### 3.    The Relief Requested Is Consistent with the Purposes of Chapter 15 and the Court's Mandate to Cooperate to the Maximum Extent Possible

70.    The relief requested herein is founded on the congressional mandate that United States courts should cooperate with foreign proceedings and foreign representatives to promote the goals of chapter 15. Section 1525 of the Bankruptcy Code provides, in pertinent part, that "[c]onsistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525(a). In turn, section 1501 provides, in pertinent part, that "[t]he purpose of [chapter 15 of the Bankruptcy Code] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of:

> (1)    cooperation between (A) courts of the United States . . . and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2)    greater legal certainty for trade and investment;
>
> (3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor;

27

(4)    protection and maximization of the value of the debtor's assets; and

(5)    facilitation of the rescue of financially troubled businesses, thereby protecting investments and preserving employment.

11 U.S.C. § 1501(a).

71.    All of the relevant objectives will be furthered by granting the relief requested herein.[18] By recognizing the Brazilian Proceeding as a "foreign main proceeding" and enjoining creditors from commencing or continuing actions against the Debtor or its assets in the United States, the Court would be fostering cooperation between courts in Brazil and the United States and ensuring that the fair and efficient administration of the Debtor's assets in the Brazilian Proceeding cannot be disrupted by creditors or other parties in interest outside of Brazil. Moreover, by empowering the Petitioner to employ the means of investigation and discovery available under United States law and procedure, this Court would be protecting and maximizing the value of United States assets belonging to or absconded from the Debtor and promoting legal certainty by ensuring those assets are collected and administered by the Petitioner in accordance with Brazilian Bankruptcy Law.

### 4.    The Relief Requested Is Consistent with the Court's Equitable Authority

72.    Finally, section 105(a) of the Bankruptcy Code enables the Court to enforce the specific statutory language of the Bankruptcy Code's other provisions consistent with the Court's broad equitable powers. *See* 11 U.S.C. § 105(a) ("[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). The Petitioner believes that the relief requested herein is expressly provided for by the statutory provisions of chapter 15, as set forth above. Out of an abundance of caution, however, to the extent that is not

---

[18]    Because the Brazilian Proceeding is a liquidation rather than a reorganization, the objective set forth in section 1501(a)(5) is moot.

the case, the Petitioner submits that the relief requested is warranted under section 105(a) of the Bankruptcy Code, as it is wholly consistent the express provisions of Bankruptcy Code and fair and equitable to all parties involved.

*        *        *

73.    For the foregoing reasons, the Petitioner respectfully requests that this Court grant the relief requested by the Petitioner through exercise of its discretionary authority pursuant to section 1521, its mandate to cooperate with the Brazilian Court and the Petitioner pursuant to sections 1525 and 1501(a), and its equitable powers pursuant to section 105(a) of the Bankruptcy Code.

**C.    The Court Should Find and Conclude that None of the Relief Requested is Manifestly Contrary to the Public Policy of the United States**

74.    The Court may deny a request for any relief under chapter 15 that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H.R. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005). "The narrow public policy exception contained in § 1506 is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States. The key determination . . . is whether the procedures used [in the foreign proceeding] meet our fundamental standards of fairness." *Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 701 F.3d 1031, 1069 (5th Cir. 2012) (internal citations omitted). It is not necessary that the result achieved in a foreign proceeding be identical to what could be obtained in the United States—"even the absence of certain procedural or constitutional rights will not itself be a bar under § 1506." *Id*. Nor is it a requirement that the procedures of the foreign proceeding be identical to those of the United States when the foreign

29

proceeding grants relief that is available under United States law. *See In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 903 (Bankr. S.D. Fla. 2015) (finding "that different requirements in Brazil for obtaining relief available in the United States do not render the [relief] contrary to United States policy"). Thus, a foreign representative should not be denied comity simply because the relief obtained in the foreign proceeding under the applicable law of that country would not be available in the United States or because the foreign proceeding employed different procedures than the United States courts. *See In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010); *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. at 903.

75.     The Petitioner submits that neither the Brazilian Proceeding nor the relief requested in the Chapter 15 Petition warrant invocation of section 1506. *See, e.g.*, *In re OAS S.A.*, 533 B.R. 83, 105 (Bankr. S.D.N.Y. 2015) (holding "that recognition of the OAS Debtors' Brazilian Bankruptcy Proceedings is not manifestly contrary to the public policy of the United States"); *see generally In re Rede Energia S.A.,* 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014) ("Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the course of civilized jurisprudence."). Pursuant to Brazilian Bankruptcy Law, the Brazilian Proceeding has provided (and continues to provide) creditors and other parties in interest with the notice and opportunities to participate and be heard that are wholly consistent with concepts of due process under United States law and jurisprudence.[19]

---

[19]     To the extent of any confidential or *ex parte* proceedings that have taken place in the Brazilian Proceeding, in each case the circumstances warranted such confidential or *ex parte* proceedings on a temporary basis before the Brazilian Court and, in any event, the Petitioner submits that such proceedings wholly comport with similar confidential and *ex parte* proceedings that are available in plenary United States bankruptcy cases under applicable United States law. *See In re OAS S.A.*, 533 B.R. at 104–105 ("Even United States recognizes exceptions to the general rule forbidding *ex parte* communications and procedures.").

76.    Moreover, since its conversion to a liquidation, the Brazilian Proceeding has played out in a manner substantially similar to a chapter 7 case under the Bankruptcy Code, with a centralized process to assert and resolve claims against the estate and a court-appointed and supervised Judicial Administrator (*i.e.*, the Petitioner) responsible for collecting and liquidating the debtor's assets and making distributions to creditors. In sum, the relief requested herein effectively extends this liquidation process into the United States, ensuring that assets belonging to or absconded from the Debtor located within the territorial United States do not escape the reach of the Brazilian Proceeding and empowering the Petitioner to employ the means of investigation and discovery that are afforded as of right to trustees in plenary United States bankruptcy cases. None of the relief requested is contrary, let alone manifestly so, to United States law or public policy.

77.    Accordingly, the Petitioner respectfully requests that the Court find and determine that recognizing the Brazilian Proceeding as a "foreign main proceeding" and granting the additional relief requested in the Chapter 15 Petition is neither prohibited nor should be limited by section 1506 of the Bankruptcy Code.

## **NOTICE AND HEARING**

78.    In accordance with section 1517(c) of the Bankruptcy Code, the Petitioner requests a hearing to consider the Chapter 15 Petition (the "Recognition Hearing") be scheduled at the "earliest possible time."[20] Notice of the Recognition Hearing is governed by Bankruptcy Rule 2002(q)(1), which provides, in pertinent part, that:

---

[20]    Although the Petitioner does not anticipate any objections to recognition of the Brazilian Proceeding, applicable rules provide parties in interest 21 days from the service of summons regarding a chapter 15 petition to object thereto and require that any objection challenging a foreign representative's designation of COMI of the foreign proceeding be filed no later than

debtor, all entities against whom provisional relief is being sought under § 1519 of the Code, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and such other entities as the court may direct, at least 21 days' notice by mail of the hearing on the petition for recognition of a foreign proceeding.

Fed. R. Bankr. P. 2002(q)(1).

79.     Pursuant to 11 U.S.C. § 1515(c), to the best of its knowledge and belief, the Petitioner (a) is not aware of the existence of any foreign proceedings of the Debtor other than the Brazilian Proceeding, nor any person or body other than itself authorized to administer the Brazilian Proceeding, (b) does not intend at this time to seek any provisional relief pursuant to section 1519 of the Bankruptcy Code, and (c) is not aware of any litigation pending in the United States in which the Debtor is a party as of the date hereof. Accordingly, subject to any notice parties the Court may direct, the Petitioner submits that no further notice of the Chapter 15 Petition and Recognition Hearing is required.

## NO PRIOR REQUEST

80.     No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Petitioner respectfully requests that the Court: (a) enter the Proposed Order, upon notice and a hearing, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as may be just and proper.

Dated: April 13, 2016                                             Respectfully submitted,

                                                        **KOBRE & KIM LLP**

                                                        s/ John D Couriel
                                                        John D. Couriel
                                                        Fla. Bar No. 831271
                                                        Jeremy Hollembeak (*pro hac vice* pending)
                                                        Stephanie L. Hauser



Fla. Bar No. 92765
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
Tel: +1 305 967 6100
Fax: +1 305 967 6120

## CERTIFICATION PURSUANT TO LOCAL RULE 9011-4(b)(1)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

s/ John D. Couriel
John D. Couriel

## VERIFICATION

I, Dr. Luis Claudio Montoro Mendes, am the managing partner of Capital Administradora Judicial Limitada ("Capital Administradora Judicial"). In my capacity as managing partner, I am authorized to make this verification on behalf of Capital Administradora Judicial. Capital Administradora Judicial is the court-appointed Judicial Administrator/Trustee for Diplomata S/A Industrial e Comercial ("Diplomata"), Klassul Indústria de Alimentos S/A ("Klassul"), Attivare Engenharia e Eletricidade Ltda ("Attivare"), Jornal Hoje Ltda ("Jornal Hoje"), and Paper Mídia Ltda ("Paper Mídia"). I have read the foregoing Verified Petition for Recognition with the translation assistance of my Brazilian counsel, Henrique R. Forssell, and the facts and matters alleged and contained therein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge, in my capacity as managing partner of Capital Administradora Judicial, of the facts involved and upon my review of the books and records customarily kept and maintained by Diplomata, Klassul, Attivare, Jornal Hoje, and Paper Mídia.

Pursuant to 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 13 day of April, 2016.

Dr. Luis Claudio Montoro Mendes,
on Behalf of Capital Administradora Judicial
Limitada, as its managing partner

34